UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CURTIS L. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-00655-JPH-DLP |
| | ) |
| WEXFORD HEALTH SOURCES INC, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Curtis L. Jones, an inmate in the Indiana Department of Correction, brings this action pursuant to 42 U.S.C. § 1983 alleging that he received inadequate medical care for a broken hand while at the Wabash Valley Correctional Facility. Mr. Jones has moved for summary judgment, the defendants have filed cross motions for summary judgment, and the motions all are fully briefed.

**I.     Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Inadmissible evidence, including hearsay, cannot be

1

used to support or defeat a summary judgment motion. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

When reviewing cross-motions for summary judgment, the Court draws all reasonable inferences in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.     Facts

Except where noted, the following facts are undisputed. The defendants are Dr. Samuel Byrd, Kim Hobson, and Wexford Health Sources, Inc.—collectively, "the medical defendants"— and Warden Richard Brown. The relevant events occurred in 2018, while Mr. Jones was in custody at Wabash Valley Correctional Facility.

On the morning of March 7, Mr. Jones broke a bone in his hand.[1] Mr. Jones promptly reported the injury to custody staff member Officer Sheldon. Officer Sheldon telephoned prison medical staff and described the injury. The medical staff member responded that Mr. Jones needed to fill out a healthcare request form. Officer Sheldon then called Sergeant Lantrip, who observed Mr. Jones's hand and then called medical himself. The medical staff member again responded that Mr. Jones would not receive treatment until he submitted a healthcare request form. Mr. Jones then filled out a form and gave it to the officers for submission. *See* dkt. 103-1 at 8 (healthcare request form). By evening, after the custody staff had changed shifts, Mr. Jones still had not been called to medical for treatment. He showed his hand to another custody staff member, Officer Thompson, who called medical. The medical staff member again responded that Mr. Jones needed to submit a healthcare request form.

On March 8, Mr. Jones was seen by Nurse Riggs.[2] Nurse Riggs ordered an x-ray, but according to Mr. Jones, she did not provide any pain medication.

On March 9, Mr. Jones received an x-ray and consulted with Dr. Byrd. The x-ray revealed a fractured and mildly displaced fifth metatarsal in Mr. Jones's right hand. Dr. Byrd could not reset the fracture, so he submitted a request for Mr. Jones to see an outside specialist. Dkt. 111-1, ¶ 7 (Dr. Byrd affidavit). Mr. Jones received orders for Tylenol and ibuprofen, as well as a splint for

---

[1] Mr. Jones reports that he fell in the shower. Dkt. 103 at 3. Dr. Byrd asserts that the type of fracture Mr. Jones sustained "is more consistent with a closed fist striking a hard object, whether it be another individual or a wall." Dkt. 111-1, ¶¶ 7−8 (Dr. Byrd affidavit) (noting that the injury is commonly known as a "boxer's fracture"). This factual dispute is not material to any party's motion for summary judgment.

[2] Mr. Jones's motion for summary judgment asserts that he was first seen by Nurse Riggs on March 9, 2018. Dkt. 103 at 4. But in his deposition, after reviewing his medical records, Mr. Jones testified that he saw Nurse Riggs on March 8, 2018. Dkt. 111-3 at 13. Likewise, in his response to the medical defendants' motion to dismiss, Mr. Jones acknowledges seeing Nurse Riggs on March 8. Dkt. 113, ¶ 1.

3

his hand. Dkt. 111-4 at 3−4 (prison medical records). According to Mr. Jones, Dr. Byrd reported that he could not send Mr. Jones to a hospital for immediate treatment because any request for such treatment had to be approved by Wexford administrators. Dkt. 103-1, p. 3, ¶¶ 35−38 (Curtis Jones affidavit). But Mr. Jones also asserts that another prisoner who broke his hand was sent to the hospital the same day. *Id.*, ¶ 38.

On March 20, Mr. Jones was treated by Dr. Benny Seto, an outside surgeon. Dr. Seto recommended surgery to correct the fracture and provided a new splint. Dkt. 111-4 at 9. According to Mr. Jones, Dr. Seto told Mr. Jones that he would have to re-break the fracture because it had started to heal "due to the prolonged delay." Dkt. 103-1, p. 4, ¶ 41.

On March 30, Dr. Seto performed surgery on Mr. Jones's hand. Dkt. 111-4 at 17. According to Mr. Jones, the surgery took longer than expected because the injury was more significant than Dr. Seto realized. Dkt. 103-1, ¶ 4, ¶ 43. After surgery, Dr. Seto prescribed the pain medication Norco, which was not on hand at the prison. Dkt. 111-4 at 17. Medical staff substituted Tylenol with codeine until the Norco prescription could be filled. *Id.*

On April 13, Mr. Jones submitted a grievance complaining about the medical staff's failure to examine him on March 7 after custody staff called in the injury. *See* dkt. 103-1 at 9 (grievance response report). Ms. Hobson denied the grievance, asserting that "[p]olicy and protocols were followed." *Id.*

According to Mr. Jones, he continues to experience pain in his right hand. Dkt. 103-1, p. 6, ¶ 54. But on July 3, 2018, Mr. Jones reported to Dr. Seto that he did not experience pain in his hand except when it was hit while he played basketball. Dkt. 111-4 at 65 (clinic medical records); *see* dkt. 111-3 at 17 (Jones deposition).

### III. Discussion

Mr. Jones alleges that Dr. Byrd was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and that Ms. Hobson, Warden Brown, and Wexford maintained a policy that caused Mr. Jones to suffer an Eighth Amendment deprivation.

#### A. Dr. Byrd

To prevail on an Eighth Amendment claim based on deliberate indifference to serious medical needs, a plaintiff must show that (1) he suffered from an objectively serious medical condition and (2) the defendant knew about his condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Knight v. Grossman*, 942 F.3d 336, 340 (7th Cir. 2019). Negligence is not enough. *Knight*, 942 F.3d at 340. "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

When Dr. Byrd viewed Mr. Jones's x-ray results, he diagnosed "an acute displaced angulated rotated and mildly comminuted fracture of the fifth metacarpal." Dkt. 111-1, ¶¶ 6−7 (Dr. Byrd affidavit); *see* dkt. 111-4 at 1−3 (prison medical records). Dr. Byrd applied a splint and ordered ibuprofen and Tylenol for Mr. Jones's pain. Dkt. 111-4 at 3−4. Dr. Byrd also submitted a request for Mr. Jones to consult with an off-site surgeon. Dkt. 111-1, ¶ 7; *see* dkt. 103-1 at 12 (email from Dr. Byrd).

Mr. Jones argues that Dr. Byrd showed deliberate indifference when he failed to immediately send Mr. Jones to a hospital for surgery after diagnosing the injury. But he offers no

evidence that would allow a jury to find that Dr. Byrd failed to exercise reasonable professional judgment. In diagnosing Mr. Jones's hand, Dr. Byrd noted that the displacement was "mild" and concluded that immediate or emergency outside treatment was not necessary. *Id.*, ¶ 23.

Mr. Jones relies on an alleged statement from Dr. Seto that "he would have to re-break [Mr. Jones's] hand because [the] hand had already started the healing process due to the prolonged delay." Dkt. 103-1, p. 4, ¶ 41; *see* dkt. 113 at 5 (Jones response to medical defendants' summary judgment motion). But this statement, at most, shows only that Dr. Seto—with the benefit of more information than Dr. Byrd had at the time he decided not to send Mr. Jones out for immediate surgery—disagreed with Dr. Byrd's decision. A difference of opinion between medical professionals, without evidence that the defendant failed to exercise medical judgment, is not enough to create a material issue of fact for summary judgment. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014) (affirming grant of summary judgment in favor of prison doctor who did not recommend surgery despite multiple contrary recommendations from other doctors).

Because Mr. Jones has provided no evidence that would allow a jury to find that Dr. Byrd was deliberately indifferent to his serious medical condition, Dr. Byrd is entitled to judgment as a matter of law.

### B. Wexford

Mr. Jones argues that Wexford maintains a policy of requiring prisoners to file healthcare request forms for non-emergency and non-urgent medical conditions, thereby delaying treatment for such conditions.

Plaintiffs may sue municipalities (or private corporations acting under color of state law to perform government services) alleging that the defendant's unconstitutional policy, practice, or custom caused a constitutional injury. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91

6

(1978). To prevail on a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020); *see Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (applying *Monell* theory of liability to private company acting under color of state law).

Wexford argues that Indiana Department of Correction, not Wexford, created and maintains a policy requiring healthcare request forms for non-emergency and non-urgent medical situations. Dkt. 109 at 21. To be sure, the written policy Mr. Jones points to is from the Indiana Department of Correction. *See* dkt. 105-4 at 31 ("Offenders who have a health concern should complete a Request for Healthcare . . . and place it in the medical box."). But the existence of an Indiana Department of Correction policy does not preclude the existence of a related Wexford policy, practice, or custom. Here, Wexford employees denied Mr. Jones immediate treatment while Indiana Department of Correction employees tried to help him get it. And Ms. Hobson's grievance response suggests that the Wexford employees were acting in accordance with company policy. Dkt. 103-1 at 9 ("Policy and protocols were followed."). The Court therefore assumes that Mr. Jones could show a Wexford policy or practice of denying immediate treatment for serious but non-emergency medical needs.

But Wexford is still entitled to summary judgment because, even assuming this policy exists, it did not violate Mr. Jones's Eighth Amendment rights. For prisoners, "delays are common in the prison setting with limited resources." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). The Eighth Amendment will not tolerate an "inexplicable delay in treatment which serves no

7

penological interest." *Id.* But Mr. Jones has provided no evidence of a policy that compels such delays. The healthcare request form requirement is flexible, with exceptions for emergent or urgent medical needs. Dkt. 104-4 at 31 ("In the event of medical emergency, offenders should notify an officer who will contact the nurse and emergency care will be provided."); *see* dkt. 111-2, ¶¶ 11−12 ("While the general rule is that patients should submit a health care request, the health care directives and policies also include exceptions, specifically in the situations of emergencies. Correctional staff are trained and instructed about their ability to call an emergency signal 3000, designating a medical emergency.").

As Mr. Jones's deposition testimony shows, the crux of his claim is his belief that a broken hand was an emergent or urgent medical need:

> Q: So again, we have no problem with the language [of the policy]; you just believe that your hand should have been considered an emergency?
>
> A: Absolutely.

Dkt. 111-3 at 8. But the decision of whether a particular medical need qualifies as an emergency is left to the staff member assessing it. Here, one or more nurses who answered calls from custody staff determined that Mr. Jones's broken hand did not require immediate medical care. There is no evidence that these nurses failed to exercise professional judgment. But even if they did show deliberate indifference in a particular instance, their actions would not render the policy itself unconstitutional.

Because Mr. Jones has failed to provide evidence Wexford has maintained a policy, practice, or custom that violated his Eighth Amendment rights, Wexford is entitled to judgment as a matter of law.

### C. Ms. Hobson and Warden Brown

As with Wexford, Mr. Jones alleges that Ms. Hobson and Warden Brown each maintains a policy of requiring prisoners to file healthcare request forms for non-emergency and non-urgent medical conditions, thereby delaying treatment for such conditions.

To the extent Mr. Jones's claims against Ms. Hobson and Warden Brown rely on the *Monell* theory of municipal liability, the defendants are entitled to judgment as a matter of law because *Monell* does not apply to individual defendants. *Martin v. Vaughn*, No. 2:20-cv-00391-JPH-MJD, 2020 WL 6205643, at *2 (S.D. Ind. Oct. 22, 2020) (citing *Johnson v. Dykstra*, No. 3-17-cv-00071-PPS-MGG, 2019 WL 2270356, at *3 (N.D. Ind. May 24, 2019).

To the extent Mr. Jones claims that Ms. Hobson and Warden Brown were personally involved in violating Mr. Jones's Eighth Amendment rights, the defendants are entitled to judgment as a matter of law because Mr. Jones has not designated evidence that would allow a jury to find such a violation. To the contrary, the designated evidence shows that neither Ms. Hobson nor Warden Brown was personally involved in treating Mr. Jones's hand injury. Dkt. 111-2, ¶ 6 (Kim Hobson affidavit); dkt. 105-1, ¶¶ 7−8, 13 (Richard Brown declaration). And even assuming Ms. Hobson or Warden Brown was involved in maintaining the prison policy of requiring prisoners to submit a healthcare request form before receiving non-emergency medical treatment, that policy did not violate Mr. Jones's Eighth Amendment rights—for the reasons discussed above in Section III.B.

### IV. Conclusion

The defendants' motions for summary judgment, dkts. [105] and [108], are **GRANTED**. Mr. Jones's motion for summary judgment, dkt. [103], is **DENIED**. Final judgment shall now enter.

**SO ORDERED.**

Date: 3/16/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CURTIS L. JONES
903494
WESTVILLE – CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov